IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARIO LAMAR WAIR, | * |
| Petitioner, | * |
| v. | *  Civil No.: GLR-18-0848 |
| | *  Criminal No.: GLR-14-0248 |
| UNITED STATES OF AMERICA, | * |
| Respondent. | * |

\*\*\*\*\*\*\*

## GOVERNMENT'S RESPONSE TO PETITIONER'S
## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
## SENTENCE BY A PERSON IN FEDERAL CUSTODY

The United States of America respectfully submits this response to Petitioner Mario Lamar Wair's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. ECF No. 400. Wair seeks a new trial based on ineffective assistance of counsel, arguing that he would have pled guilty had he known the public authority defense—his defense at trial—was unavailable and that he could have benefitted from the acceptance of responsibility adjustment under the Sentencing Guidelines. The record says otherwise.

As to the public authority defense, Wair could not have plausibly relied on it before trial, absent several false representations to the Court. There is also no indication that proper counseling would have changed the outcome, given that Wair ignored all efforts by others to inform him of the law. As to the acceptance adjustment, any alleged deficiency would not have affected the outcome because Wair has never accepted responsibility. He gave false testimony at trial, and he continues to deny responsibility in his Motion. He also rejected an opportunity to seek a sentence below the mandatory minimum, which would have been a more impactful benefit.

Because Wair cannot show prejudice for either ground, the Court should deny the Motion.

**BACKGROUND**

I.  **The Offense and Trial**

A federal grand jury returned a second superseding indictment charging Wair with conspiracy to traffic cocaine and crack cocaine, as well as substantive drug trafficking. ECF No. 185. He proceeded to a jury trial. *See* ECF Nos. 331, 333, 334, 335. The Government elicited testimony from law enforcement officers that, although Wair had worked briefly as a confidential informant, the officers had deactivated him before the start of the alleged drug conspiracy. Trial Tr., Nov. 3, 2015, ECF No. 358, at 212. Wair, consequently, was not a confidential informant at the time of the offense. *Id.* Moreover, the Government offered evidence that his controlling officer lacked the authority to direct confidential informants to sell drugs. One officer testified that confidential informants are never permitted to sell drugs. *Id.* at 209. And Wair's confidential informant agreement expressly prohibited him from committing other illegal acts or acting outside the expressed direction of his controlling officer.

The Government also elicited testimony that Wair had asked for his drugs back twice on the day of his arrest. *Id.* at 120, 156–57. When the officers refused, Wair called his co-conspirator and discussed needing to get more drugs. *Id.* at 93–94.

II.  **The Public Authority Defense**

During trial, after the Government finished presenting its evidence, Wair attempted to invoke the public authority defense. It was the first time he had raised the defense, and he had not provided the notice required by the Federal Rules of Criminal Procedure:

> THE COURT: [I]t's my understanding that the defense is not going to be a public authority defense.
>
> COUNSEL: But it will be, Your Honor.
>
> THE COURT: Oh, it will be?

> COUNSEL: It will be.

Trial Tr., Nov. 4, 2015, ECF No. 359, at 50.

When pressed by Court on the failure to invoke the defense earlier, Wair's counsel maintained—several times—that it arose only after the start of trial. During the first of such exchanges, Wair's trial counsel asserted that he never anticipated bringing the defense:

> THE COURT: Why wasn't the Government provided notice of [the public authority defense]?
>
> COUNSEL: I did not anticipate initially that defense, Your Honor. It evolved. . . . I really have no excuse for it. I didn't anticipate it.

*Id.* at 50–51. Moments later, Wair's counsel represented, more specifically, that the defense did not arise prior to trial:

> THE COURT: Right. It's something that a defense, potential defense that, without revealing the substance of your conversation, arose during the course of the trial; is that fair to say?
>
> COUNSEL: Essentially, yes. Your Honor.

*Id.* at 51. Wair personally affirmed that position on the record:

> THE COURT: . . . I understand that notice is typically required, but I also appreciate the understanding and the arguments by the defense that this was a defense that arose within a day of trial, and they contemplated bringing it forward today, or yesterday evening, or whatever time. Is that accurate?
>
> MR. WAIR: Yeah.

*Id.* at 61. The Court, relying on those representations, added:

> THE COURT: Let the record reflect that the defendant has affirmatively indicated that [the public authority defense] was a defense that they considered and pondered during the course of the government's case.

*Id.* at 62.

3

Entirely on that basis, the Court allowed Wair to invoke the public authority defense, provided he could present credible evidence to support it. *Id.* at 66. Before allowing Wair to proceed, the Court advised him on the governing law—namely, that the defense requires the controlling officer to have had the actual authority to authorize the illegal acts:

> THE COURT: [U]nless you put on testimony that [law enforcement] had actual authority to do what he was doing, then the defense isn't going to forward to the jury, because that's element of the defense, actual authority.

*Id.* at 66. The Court explained the legal requirements to Wair at least 20 times before he proceeded with the defense, including several warnings that Wair's subjective belief about his status and the authority of the controlling officer was irrelevant. *See id.* at 51–52, 54–55, 59, 62–63, 65–69, 71–73. The Government repeated the requirements in Wair's presence at least five additional times. *See id.* at 52, 57–58, 60, 62. At one point, the Court asked Wair directly whether he understood the law, and Wair personally responded that he did:

> THE COURT: But understand that there's going to have to be proof of actual authority . . . . Mr. Wair, do you understand?
>
> MR. WAIR: Yes.

*Id.* at 63.

After the lengthy exchange, the Court conditionally allowed Wair to proceed on the defense. Wair, despite the Court's warnings, testified that he believed he was acting as a confidential informant under the direction of law enforcement during the alleged drug conspiracy. *See, e.g.*, *id.* at 104, 121–22. He did not produce evidence of actual authority. Quite the opposite, Wair testified that his duties included only gathering information and reporting that information to law enforcement. *Id.* at 102–04. He also testified that he had not spoken to his controlling officer "for at least a week" prior to the drug transaction that led to his arrest. *Id.* at 109. In contrast, the

Government's evidence has since shown that no calls were made with Wair's controlling officer during the alleged conspiracy until after his arrest, when Wair called the officer for help. Sentencing Hr'g Tr. 9:5–22, Jan. 27, 2016, ECF No. 388.

On the Government's motion, the Court struck Wair's testimony as to the public authority defense and instructed the jury to disregard any corresponding testimony. Trial Tr., Nov. 4, 2015, 4:10–5:22, ECF No. 391. A jury convicted Wair of both counts. ECF No. 343.

### III. The Government's Plea Offer and Wair's Sentencing

Prior to trial, the Government informed Wair that he faced a mandatory minimum imprisonment of 10 years. *See* Mots. Hr'g Tr. 12:21–23, Aug. 20, 2015, ECF No. 387. The Government offered Wair a C plea that gave him an opportunity to escape the mandatory minimum, stipulating to a sentence between 108 and 132 months. Wair rejected the offer. *See id.* Wair was a career offender with a corresponding guideline range of 360 months to life imprisonment, based on a total offense level of 37 and a Criminal History Category of VI. Sentencing Hr'g Tr. 6:9–12. Because Wair gave false testimony that he sold drugs at the direction of law enforcement, an obstruction of justice enhancement applied but did not affect his guideline range. *Id.* at 5:16–6:8. The Court sentenced Wair to 180 months of imprisonment. ECF No. 373.

The United States Court of Appeals for the Fourth Circuit affirmed the conviction. *See United States v. Wair*, 666 F. App'x 250, 253 (4th Cir. 2016). The Supreme Court of the United States denied certiorari. *See Wair v. United States*, 137 S. Ct. 1360 (2017). In March 2018, Wair filed this timely Motion claiming ineffective assistance and seeking a new trial. ECF No. 400. The Court directed the Government to respond. ECF No. 401.

**ARGUMENT**

Wair raises two grounds for ineffective assistance. First, he contends that his counsel did not properly investigate his public authority defense. Second, he argues that his counsel failed to advise him that he could benefit under acceptance adjustment. Both arguments fail under the prejudice prong of *Strickland v. Washington*, 466 U.S. 668 (1984). Wair cannot credibly claim that any such failure caused him to reject the plea offer, given the numerous representations that he considered the defense only midway through trial and that he scorned all efforts to advise him on the law. In addition, Wair cannot show that he would benefit from the acceptance adjustment because he has never accepted responsibility and continues to deny responsibility in his Motion. He also rejected an offer that allowed him to get a sentence below the mandatory minimum, which would have benefitted him more than the acceptance adjustment. Any alleged failures would not have affected the outcome at trial.

**I.    Legal Standard**

Under § 2255, a petitioner may collaterally attack a conviction or sentence based on any one of four grounds—(1) that the conviction or sentence was "imposed in violation of the Constitution or laws of the United States," (2) that the district court was "without jurisdiction to impose such sentence," (3) that the sentence exceeds "the maximum authorized by law," or (4) that the conviction or sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The petitioner must prove the asserted grounds by a preponderance of the evidence. *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010); *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

Here, Wair proceeds under the first ground by raising a Sixth Amendment ineffectiveness claim. Although Wair did not raise ineffectiveness on direct appeal, a § 2255 motion is the proper

avenue for such claims. *See Massaro v. United States*, 538 U.S. 500, 504–06 (2003) (recognizing that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance" because the trial record is "often incomplete or inadequate" for addressing such claims on direct review, thereby risking the failure of "[e]ven meritorious claims").

The Supreme Court, in *Strickland v. Washington*, interpreted the Sixth Amendment right to counsel as also providing the right to effective assistance. 466 U.S. 668, 686 (1984) (citing *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). When a petitioner claims that the right is denied, the petitioner must establish both (1) that counsel's performance was so deficient, it fell below an objective standard of reasonableness; and (2) that counsel's inadequate performance was prejudicial. *Id.* at 687–88. Relevant here, the second *Strickland* prong requires the petitioner to "affirmatively prove prejudice," requiring a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693–94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

If the petitioner fails to prove one of the *Strickland* prongs, the Court need not evaluate the other. *Moore v. Hardee*, 723 F.3d 488, 500 (4th Cir. 2013). "Indeed, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* (citing *Strickland*, 466 U.S. at 697) (internal citations omitted). Here, the prejudice prong is sufficient alone to deny both of Wair's claims.

**II.    Wair Cannot Show Prejudice for the Failure to Investigate Because He Ignored Efforts to Advise Him of the Public Authority Defense.**

Wair first argues ineffective assistance on the basis that his counsel failed to investigate the public authority defense. Wair argues that, had he known the defense could not succeed, he

"would have avoided a trial, pled guilty and would have accepted responsibility." Mot. at 14; *see also* Wair Aff. ¶ 3, ECF No. 100-1 ("Had I known that Agents Hagee and Lettau, never had the authority to direct me to [perform] the controlled buys, . . . I would have never proceeded to trial and would have pled guilty. . . ."). Wair, who testified falsely at trial, now offers only his own self-serving affidavit to suggest he would have accepted a plea offer, which courts have found insufficient alone to show prejudice. *See, e.g.*, *Merzbacher v. Shearin*, 706 F.3d 356, 367 (4th Cir. 2013) ("Merzbacher's self serving assertion that he would have accepted the plea is, as both the state and federal courts recognized, the type of testimony subject to heavy skepticism." (internal citation and quotation marks omitted)).

The position is even more tenuous in light of the record evidence. Everything in the record suggests that Wair would not have pled guilty, even if properly counseled. For one thing, during trial, Wair personally told the Court that he had not considered the defense until after the start of trial. His statement was bolstered by several representations from his counsel, and the position generated a specific finding by the Court that the defense had not been "considered and pondered" until "during the course of the government's case." Trial Tr., Nov. 4, 2015, ECF No. 359, at 62.

Wair's argument is also undermined by the fact that he did not give written notice of the defense prior to trial, as the Rules required. *See* Fed. R. Crim. P. 12.3(a)(1) (requiring a defendant to "notify an attorney for the government in writing" if he "intends to assert a defense of actual or believed exercise of public authority on behalf of a law enforcement agency"). Had he truly considered the defense in advance, Wair frustrated the Rules by claiming the opposite at trial to excuse not following them. His representations were, in fact, the only reason the Court allowed him to proceed with the defense. *See* Trial Tr., Nov. 4, 2015, ECF No. 359, at 66. Unless Wair was personally untruthful on this point at trial, *see id.* at 61, it is not plausible that he relied on the

defense when electing trial, *see United States v. Day*, 969 F.2d 39, 46 n. 9 (3d Cir. 1992) ("[C]ourts should be wary of this sort of claim because defendants will always want the best of both worlds: the chance at acquittal at trial, yet the chance to plead guilty if the trial defense fails.").

To the extent that Wair is now telling the truth, he still cannot show prejudice because the course of events strongly suggest that Wair would have ignored any attempt to counsel him properly on the law. In a lengthy colloquy before Wair proceeded, the Court and Government made him fully aware of the standard for establishing the public authority defense. He was warned no less than 25 total times. *See* Trial Tr., Nov. 4, 2015, ECF No. 359, at 51–52, 54–55, 57–60, 62–63, 65–69, 71–73. After saying he understood the law, Wair ignored the warnings and put on untruthful testimony to support the defense. *Id.* at 63. Under these circumstances, there is almost no reasonable probability that proper counseling from his attorney would have changed the outcome—primarily because persistent counseling elsewhere failed to dissuade him, and secondarily because he was not acting in good faith. Indeed, despite now acknowledging that the defense is inapplicable, Wair continues to assert it in his Motion anyway, as he still maintains that "he was a confidential informant" and that his controlling officer directed him to make the sales. *See* Mot. at 13.

Based on the overwhelming record evidence, Wair cannot meet the prejudice prong of *Strickland* on his failure to investigate claim.

III. **Wair Cannot Show Prejudice for the Failure to Advise Because Has Never Accepted Responsibility, and He Obstructed Justice at Trial.**

Wair next argues that his counsel was ineffective because his counsel did not advise him of the acceptance adjustment. But there are several flaws in that argument. First, Wair has never accepted responsibility and instead blamed his conduct on law enforcement. The acceptance adjustment is not granted as a matter of right. On the one hand, it often applies when, among other

factors, the defendant withdraws from the criminal conduct and truthfully admits the conduct comprising the conviction. U.S.S.G. § 3E1.1, Commentary, Application note 1(A). On the other hand, "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." *Id.*

Wair's conduct throughout the proceedings has been inconsistent with the factors supporting acceptance and consistent with the factors opposing it. *See United States v. Atwood*, 673 F. App'x 177, 181 n.7 (3d Cir. 2016) (affirming the denial of the reduction where the defendants continued to engage in the criminal conduct). Prior to trial, Wair continued his criminal activity despite his arrest. After his arrest, for example, Wair repeatedly asked for the drugs back and contacted his co-conspirator to strategize completing the sales. Trial Tr., Nov. 3, 2015, ECF No. 358, at 93–94, 120, 156–57. At trial, he testified untruthfully that he operated at the direction of a controlling officer, despite his conflicting testimony that he had not spoken to that officer for at least a week prior to the sale and records showing no phone calls with his controlling officer during the conspiracy until after his arrest. *See, e.g.*, Sentencing Hr'g Tr. 9:5–22. Such conduct "reflect[s] neither remorse nor acceptance responsibility." *Obayanju v. United States*, 120 F. Supp. 2d 546, 549 (D. Md. 2000); *see also United States v. Knight*, 606 F.3d 171, 175 (4th Cir. 2010) ("[C]onduct that results in an obstruction of justice enhancement ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." (internal citation and quotation marks omitted)).

Second, because Wair continues to deny responsibility, he likely would not have benefited from the adjustment. *See Obayanju*, 120 F. Supp. 2d at 549 (declining to find prejudice for failing to advise of the acceptance adjustment where the defendant "continued to deny responsibility for his criminal conduct" after trial). In both his Motion and supporting affidavit, Wair continues to

blame law enforcement for the drugs—writing, for example, that he was "under the impression that he was still working as an informant," Mot. at 13, and that controlling officers "direct[ed] me to [perform] the controlled buys," Wair Aff. ¶ 3. Those statements portray an unwillingness to accept responsibility even after both this Court and the Fourth Circuit have rejected his defense. *See Wair*, 666 F. App'x at 253 ("Wair failed to present any evidence that [the officer] possessed the actual authority to authorize these illegal transactions.").

Finally, Wair rejected a plea offer that included an opportunity to escape the mandatory minimum sentence. As the Court must adhere to a mandatory minimum, even with an acceptance adjustment, Wair cannot show how the acceptance adjustment alone would have substantially affected his decision or the outcome. *See* U.S.S.G. § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.").

Based on his conduct at every stage of the proceedings, including post-conviction, Wair cannot satisfy the *Strickland* prejudice prong as to the acceptance adjustment claim.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that Wair's Motion be denied without an evidentiary hearing.

                Respectfully submitted,

                Robert K. Hur
                United States Attorney

                /s/
                Brandon K. Moore
                Assistant United States Attorney
                36 S. Charles Street, Fourth Floor
                Baltimore, Maryland 21201
                Phone: (410) 209-4826
                Fax: (410) 962-3124

Date: July 24, 2018

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the 24th day of July, 2018, a copy of the foregoing response was sent by first-class mail, postage prepaid, certified receipt requested to:

Mario Lamar Wair
#58050-037
FCI Danbury
Route 37
Danbury, CT 06811

/s/
Brandon K. Moore
Assistant United States Attorney